UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEROME WALKER,

                Plaintiff,

v.                                   Case No. 20-cv-1555-pp

CHRISTINA SERRANO, MICHAEL JEAN,
RACHEL MATUSHAK, SIEANNA EDWARDS,
DR. DANIEL LAVOIE and WILLIAM SWIEKATOWSKI,

                Defendants.

**ORDER GRANTING DEFENDANT EDWARDS'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 67), GRANTING STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 75) AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 99)**

Plaintiff Jerome Walker, who is incarcerated at the Green Bay Correctional Institution, filed this case in the Western District of Wisconsin. Dkt. No. 1. The court allowed him to proceed on claims that the defendants took the following adverse actions in retaliation for his grievances: (1) Christina Serrano, Sieanna Edwards, Rachel Matushak, Dr. Daniel LaVoie and William Swiekatowksi allegedly restricted his access to his bismuth tablets; (2) Serrano and Michael Jean allegedly tried to force him to take bismuth medication when he did not need it, then issued him a conduct report for refusing; (3) Edwards and Jean allegedly falsely accused the plaintiff of trying to "cheek" a blue pill;[1]

---

[1] On December 7, 2021, the court granted Edwards's motion for summary judgment for failure to exhaust administrative remedies related to this claim against Edwards. Dkt. No. 40.

1

and (4) Matushak allegedly refused to provide a statement confirming the color of the plaintiff's medications. Dkt. No. 8 at 5-6; Dkt. No. 31 at 1-2. The case was transferred to the Eastern District of Wisconsin on October 7, 2020. Dkt. No. 18.

Edwards has filed a motion for summary judgment as to the plaintiff's remaining retaliation claim against her, which is that Edwards and other defendants restricted the plaintiff's access to bismuth by changing the medication status from "keep on person" to staff-controlled. Dkt. No. 67. Jean, LaVoie, Matushak, Serrano and Swiekatowski ("State defendants"), who are represented by separate counsel, have filed a motion for partial summary judgment, contending that the court must dismiss the plaintiff's retaliation claim against Swiekatowski based on allegations he restricted the plaintiff's access to bismuth. Dkt. No. 75. In their summary judgment brief, the State defendants argue that the court also should dismiss the plaintiff's claim that Swiekatowski retaliated against the plaintiff by falsely stating that Matushak was unavailable to testify at the plaintiff's major disciplinary hearing. Dkt. No. 76 at 1. The court's screening order references these allegations against a then-Doe defendant in conjunction with the plaintiff's allegations that defendants violated his due process rights, but the court did not allow the plaintiff to proceed on a due process claim. Dkt. No. 8 at 4, 7-8. At screening, the court did not construe these allegations as a retaliation claim. Id. at 5-6. Because the State defendants construe the allegations as a retaliation claim and because the parties have briefed the claim at summary judgment, however, the court

will address the State defendants' motion for summary judgment as to this claim.

Finally, the plaintiff has filed a motion for sanctions. Dkt. No. 99.

## I. Facts[2]

### A. Edwards's Summary Judgment Motion

The incident the plaintiff complains of occurred while he was incarcerated at Green Bay Correctional Institution. Dkt. No. 112 at ¶9. Edwards worked as a licensed practical nurse ("LPN") at Green Bay during the relevant time. Id. at ¶4.

The plaintiff has been prescribed bismuth (generic Pepto-Bismol) for several years to prevent nausea and diarrhea. Id. at ¶6; Dkt. No. 111 at ¶8. When designated as "KOP" or "keep on person," the plaintiff may keep bismuth in his cell to take as needed. Dkt. No. 112 at ¶6. The plaintiff alleges that Edwards conspired with others to change his order for bismuth from "keep on person" to staff-controlled in retaliation for the plaintiff complaining about his medication. Id. at ¶10; Dkt. No. 111 at ¶10.

When a physician prescribes a medication for an incarcerated individual, the medication is designated either as a "staff-control" delivery, meaning that staff must deliver the medication to the individual, or "keep on person" meaning that the individual may keep the medication in his cell. Dkt. No. 112 at ¶11. As an LPN, Edwards is not licensed to prescribe medication and she did

---

[2] Unless otherwise noted, the court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

not have the authority to designate any medication as "secure" or "keep on person." Id. at ¶¶12-14. Edwards did not change the plaintiff's bismuth medication order from "keep on person" to "staff-control" nor did she have the authority to do so. Id. at ¶¶17, 19-20. Edwards had no authority to give the plaintiff bismuth to keep on his person when the bismuth medication was ordered to be delivered "staff-control" to him during med-pass. Id. at ¶21.

On November 21, 2019, the plaintiff signed a grievance (GBCI-2019-20179) related to the allegation in his complaint that bismuth was switched from "keep on person" to staff-controlled. Dkt. No. 112 at ¶22. In the grievance, the plaintiff stated that

> HSU recently canceled my pregabalin meds because I can't take them outside of the manufacture's [sic] capsule and I complained to HSU, cell hall staff and the warden and then my bismuth meds were switched to controlled and when I asked the nurse why she said that if I wasn't complaining so much then I probably wouldn't have these problems. There is no valid medical reason for this med to be controlled.

Dkt. No. 71-1 at 9. The plaintiff did not name Edwards in his grievance, although he states that when he wrote the grievance, he didn't know her name and so he referred to her as "the nurse." Id.; Dkt. No. 92 at ¶23; Dkt. No. 111 at ¶27. He states that it was Edwards who told him that if he wasn't complaining so much, he probably wouldn't have these problems. Dkt. No. 111 at ¶28.

Dr. LaVoie entered the plaintiff's bismuth prescription as staff-controlled on September 13, 2019. Id. at ¶23. Dr. LaVoie entered a subsequent order on November 21, 2019, changing the plaintiff's prescription for bismuth from

4

staff-controlled to "KOP" (keep on person). Id. at ¶24. According to Edwards, she was not involved in changing the plaintiff's prescription for bismuth from "keep on person" to "staff-controlled."³ Id. at ¶25.

B.      State Defendants' Partial Summary Judgment Motion

Swiekatowski works as a supervising officer 2 (captain) at Green Bay. Dkt. No. 77 at ¶2. As a captain, he is not involved in prescribing medications. Id. at ¶4. That means that Swiekatowski would not have been involved in changing the plaintiff's bismuth prescription to staff-controlled. Id. An advanced care provider in the health services unit makes that decision. Id. Swiekatowski also does not distribute medications. Dkt. No. 77 at ¶5. Correctional officers or nurses perform this duty. Id.

Swiekatowski sometimes reviews DOC-73 Inmate Request for Attendance of Witness/Evidence forms in preparation for due process hearings. Id. at ¶6. On January 3, 2020, Swiekatowski reviewed the plaintiff's DOC-73 form for Conduct Report Number 69606. Id. The plaintiff had requested Nurse

---

³ The plaintiff states that Edwards had his medication changed from "keep on person" to staff-controlled in retaliation for the complaints the plaintiff made. Dkt. No. 111 at ¶31. The plaintiff cites to his declaration (dkt. no. 94) and to his grievance in support of his assertion. These documents, however, do not establish that Edwards had the plaintiff's medication changed from "keep on person" to staff-controlled; they contain only his allegations that she did so. In addition, the plaintiff submitted the Declaration of James Lewis, an incarcerated individual who worked as an LPN before his incarceration. Dkt. No. 95. Lewis says that nurses may suggest to doctors or nurse practitioners that medication be "staff-controlled," and states the opinion that there would be no reason for bismuth to be "staff-controlled." Id. at ¶¶14, 17. Mr. Lewis's declaration does not establish that Edwards had the plaintiff's bismuth changed from "keep on person" to staff-controlled, nor does he offer admissible facts material to resolving Edwards's motion for summary judgment.

Matushak as a witness at his due process hearing, scheduled for January 9, 2020. Id. Swiekatowski looked up Matushak's schedule and saw she was not scheduled to work that day, so he noted that she would not be attending the hearing in person but would instead be giving a written statement. Id. According to Wis. Admin. Code §DOC 303.84(4)(b), a witness is not required to attend a due process hearing if the witness is unavailable, which includes "being on a different shift in the case of an employee." Id. at ¶7. The State defendants say that because Nurse Matushak was not scheduled to work on January 9, 2020, she was not required to attend the plaintiff's due process hearing and instead was sent a witness form to provide a written statement.[4] Id.

After Swiekatowski completes his review of the DOC-73 form, he gives the completed form to the office operations associate for processing, who contacts the requested witness and obtains the witness statement, which is then sent to the hearing officer. Id. at ¶8. Swiekatowski is not involved in this process. Id. He had no further involvement in the due process hearing for Conduct Report Number 69606. Id. at ¶9. When Swiekatowski signed the plaintiff's DOC-73 form on January 3, 2020, he started writing the wrong date

---

[4] The plaintiff disputes that Matushak was not working on January 9, 2020. He says that Matushak's schedule was altered so that it would reflect the defendants' narrative that she did not work on January 9, 2020. Dkt. No. 117 at ¶6. The plaintiff compares the shading on the staff schedule and notes that the January 9 box for Nurse Matushak is not fully shaded, unlike the other boxes shaded on the schedule. Id.; Dkt No. 78-2; Dkt. No. 123 at ¶¶2-7.

6

Case 2:20-cv-01555-PP   Filed 03/21/23   Page 6 of 19   Document 126

at first, which is why the date looks messy.[5] Id. at ¶10. Nurse Matushak returned her witness form stating, "I have no statements regarding this case." Id. at ¶11.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[5] The plaintiff states that Swiewkatowski, in his role as captain, signs and dates papers all day so he would not have mistaken the 3rd as being the 9th. Dkt. No. 123 at ¶9. According to the plaintiff, Swiekatowski altered the DOC-73 so the date was changed from January 3 to January 9, 2020. Id. at ¶11. The plaintiff has not cited evidence to establish that Swiekatowski altered the DOC-73 form.

7

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

At the summary judgment stage, the plaintiff has the initial burden to make out a *prima facie* case of retaliation by showing that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." Hawkins v. Mitchell, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). If the plaintiff makes this *prima facie* showing, the defendants must show that the adverse action would have occurred anyway. Mays v. Springborn, 719 F.3d 631, 634 (7th Cir. 2013); see also Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011) (if plaintiff meets all three elements, burden shifts to show that defendants would have taken the same actions "even in the absence of protected conduct"). If the defendants meet this burden, then the plaintiff must show that their proffered reason was pretextual—in other words, made up to cover up the real reason— and that the real reason was retaliatory animus. Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012).

8

Case 2:20-cv-01555-PP   Filed 03/21/23   Page 8 of 19   Document 126

1. *Edwards's Summary Judgment Motion*

For summary judgment purposes, Edwards does not challenge the first element that the plaintiff was engaging in activity protected by the Constitution in complaining about his access to medication. Dkt. No. 68 at 4. Edwards contends that the plaintiff cannot meet his burden of establishing that she subjected him to adverse treatment in retaliation for complaining about his medication because she did not change the order for the plaintiff's bismuth from "keep on person" to "staff-control" nor was she involved in that decision. Id. at 4-7. She also states that she had no authority to alter the orders of the physician or prison policy. Id. at 7-8.

The plaintiff responds that Edwards conspired with other staff to have his bismuth medication changed from "keep on person" to "staff-controlled," meaning he only had the option of taking the medication at evening med pass. Dkt. No. 91 at 5. The plaintiff states that although Dr. LaVoie wrote the order to change the plaintiff's bismuth to staff-controlled, "he would have had no reason to do so outside a suggestion from Ms. Edwards." Id. at 6. According to the plaintiff, Edwards would not have known his bismuth medication had been changed because of his complaints unless she had something to do with it. Id. He draws the conclusion from this reasoning that Edwards had the plaintiff's medication changed from "keep-on-person" to staff-controlled and she did so in retaliation for the plaintiff's many complaints concerning his medication. Id.

The parties do not dispute that Dr. LaVoie, not Edwards, changed the plaintiff's bismuth prescription from "keep-on-person" to staff-controlled and

9

that Edwards had no authority to change the prescription or to deviate from the prescription as written. The plaintiff says that he asked Edwards why his bismuth medication had been changed and she said that if he hadn't been complaining so much, he probably wouldn't have these problems. According to the plaintiff, this demonstrates that Edwards changed his medication (or "conspired" with Dr. LaVoie to change it) in retaliation for complaints he filed. This is pure speculation. Edwards's alleged statement, made after Dr. LaVoie changed the plaintiff's bismuth medication, does not permit an inference that *Edwards* changed his medication, or that she conspired with or influenced Dr. LaVoie to change his medication. See Jones v. Van Lanen, 27 F.4th 1280, 1286-87 (7th Cir. 2022); see also Devbrow v. Gallegos, 735 F.3d 584, 588 (7th Cir. 2013) (speculation regarding a defendant's allegedly retaliatory motive cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment). The plaintiff's own allegations explain how Edwards knew his bismuth medication had been changed—he says he asked her why it had been changed. The fact that she responded with her opinion about why it might have been changed does not prove that she had anything to do with the change. The plaintiff has not submitted evidence that Edwards took any action in retaliation for the plaintiff's complaints about his medication. A reasonable factfinder could not conclude that Edwards retaliated against the plaintiff and the court will grant Edwards's motion for summary judgment.

### 2. *State Defendants' Partial Summary Judgment Motion*

The State defendants contend that the plaintiff's claims against Swiekatowski must be dismissed because, assuming the plaintiff can prove all three elements to state a First Amendment retaliation claim, Swiekatowski would have taken the same action regardless of the plaintiff's complaints about his medications. Dkt. No. 76 at 1, 7. As to the plaintiff's claim that Swiekatowski lied when he denied the plaintiff's request for Matushak's presence at his hearing, the defendants state that Swiekatowski checked Matushak's work schedule for January 9, 2020, and when he saw that she was not scheduled to work, checked a box to indicate that she would instead provide a written statement and cited the pertinent administrative rule that allowed him to excuse her. Dkt. No. 76 at 7-8. According to these defendants, Swiekatowski's decision to substitute Matushak's testimony for her written statement would have been the same regardless of the plaintiff's protected right to complain about his medications because Swiekatowksi simply followed the applicable rules and consequently, the plaintiff's claim that Swiekatowski retaliated against him must be dismissed. Id. at 8. The State defendants also contend that the plaintiff's claim that Swiekatowski retaliated by restricting the plaintiff's medication access because the plaintiff made too many complaints about his medications lacks merit because Swiekatowski is not involved in prescribing medications and would not have been involved in changing the plaintiff's bismuth prescription to staff-controlled. Id. They also state that Swiekatowski does not distribute medications. Id. at 8-9.

11

The plaintiff argues that Swiekatowski is not entitled to partial summary judgment because he did retaliate against the plaintiff by having his bismuth medication made staff-controlled when it previously had been "keep on person" for years due to the plaintiff's constant complaints about how his medication was being delivered. Dkt. No. 114 at 1. He contends that Swiekatowski further retaliated by lying when he stated that Matushak was unavailable to testify at his major disciplinary hearing which resulted in the plaintiff serving thirty days confinement. Id. According to the plaintiff, it is undisputed that Matushak was not working on January 9, 2020, because on the schedule provided by Swiekatowski, every area that is shaded has the boxes shaded completely. Id. at 5. He states that Matushak's schedule was altered so that it would reflect the defendants' narrative that she did not work on January 9, 2020. Id. at 6. The plaintiff states that Swiekatowski denied the plaintiff the witness he requested by falsely stating she was not working on January 9, 2020, and then altering the DOC-73 so as to change the date from January 3, 2020 to January 9, 2020—the date of the hearing. Id. Regarding his other claim against Swiekatowski, the plaintiff contends that, as a captain, Swiekatowski was in a position to make suggestions, or otherwise give input, on whether a medication should be staff-controlled based on information he was privy to. Id.

The plaintiff's claim that Swiekatowski changed his bismuth medication from "keep-on-person" to staff-controlled fails for the same reason the claim fails against Edwards—it is pure speculation. The plaintiff has not offered evidence to support an inference that Swiekatowski had a role in changing his

12

bismuth medication. The court will grant the State defendants' motion for summary judgment regarding this claim.

The plaintiff's claim that Swiekatowski falsely stated that Matushak was not working on January 9, 2020 and could not testify at his disciplinary hearing also cannot survive summary judgment. The facts remain undisputed that the plaintiff's hearing was January 9, 2020, that Matushak was not working on January 9, 2020, that Wis. Admin. Code §DOC 303.84(4)(b) does not compel a witness' presence at a hearing if that witness is not scheduled to work a shift and that Swiekatowksi was aware of this rule and cited to it on the plaintiff's DOC-73 request. Even if Swiekatowski excused Matushak from testifying at the plaintiff's disciplinary hearing in retaliation for complaints the plaintiff filed (which the plaintiff has not shown), the State defendants have shown that Swiekatowski would have taken the same action regardless of the plaintiff's complaints. The plaintiff speculates that the staffing chart was altered to support the defendants' narrative that Matushak wasn't working on January 9, 2020, based on differences in how the boxes on the chart were shaded. The plaintiff's unsupported speculation does not establish that Matushak was not working on January 9, 2020. Even if the chart was altered, the record does not support a finding that *Swiekatowski* altered the chart. In addition, the plaintiff's contention that Swiekatowski altered the hearing date on the DOC-73 form lacks support in the record. The record reflects that Swiekatowski followed DOC policy and had Matushak provide a written statement for the plaintiff's hearing, which read, "I have no statements

13

regarding this case." Dkt. No. 78-1 at 6. The record before the court requires the court to grant the State defendants' motion for summary judgment as to the plaintiff's retaliation claims against Swiekatowski.[6]

### 3. *Summary*

The court will grant Edwards's motion for summary judgment and dismiss Edwards, and will grant the State defendants' motion for partial summary judgment and dismiss Swiekatowski. The following retaliation claims remain against the following defendants: (1) that Serrano, Matushak and LaVoie restricted his access to his bismuth tablets; (2) that Serrano and Jean allegedly tried to force him to take bismuth medication when he did not need it, then issued him a conduct report for refusing; (3) that Jean allegedly falsely accused the plaintiff of trying to "cheek" a blue pill; and (4) that Matushak allegedly refused to provide a statement confirming the color of the plaintiff's medications.

### III. **Plaintiff's Motion to Penalize (Dkt. No. 99)**

On June 30, 2022, before the defendants' summary judgment motions had been fully briefed, the court received from the plaintiff a motion to penalize in which he contends that counsel for the defendants had a correctional officer make a false declaration as to why the court should deny the plaintiff an

---

[6] Because the court has granted the State defendants' motion for partial summary judgment, it need not consider their contention that Swiekatowski is entitled to qualified immunity.

14

extension of time to respond to summary judgment.[7] Dkt. No. 99 at 1. According to the plaintiff, in response to his motions for extension of time to respond to the defendants' motions for summary judgment, the defendants falsely stated that there was no evidence that the institution mail room had held or rejected his outgoing legal mail. Id. The plaintiff has attached to his motion an ICE Report dated May 13, 2022, for Complaint Number GBCI-2022-7495, in which the institution complaint examiner states:

> Inmate Walker complains that he sent two big envelopes to Inmate Lewis at KMCI but Lewis only received one of the envelopes.
>
> This examiner reviewed the inmate's trust account and on 01/18/22 he was charged $15.75 and $16.85 for postage so I contacted the mailroom. The mailroom said they sent two big manila envelopes out for the inmate. I contacted TextBehind and they said that one envelope was sent to Inmate Lewis but the other one was canceled. The DOC is the only on that cancel it [sic]. The mailroom said they didn't cancel it. I was not able to determine why it was canceled but TextBehind said that they would manually print the mail and send it to Lewis.
>
> Since the mail was canceled and inmate Lewis didn't receive until nearly six months later, the ICE recommends affirming this complaint. If Inmate Walker missed his court deadline, he may notify the court and the institution will confirm this with the courts should the courts contact the institution for verification.

Dkt. No. 99-1 at 1. The plaintiff contends that the ICE Report shows that counsel had staff make a false declaration and he requests that the court sanction Edwards's and the State defendants' lawyers $2,500 each. Id. at 2.

---

[7] On July 12, 2022, the court granted the plaintiff's motions for extension of time to respond to the defendants' motions for summary judgment. Dkt. No. 101. The summary judgment motions the court has addressed in this order were fully briefed when the court considered them.

The State defendants respond that the court should deny the plaintiff's motion because they did not lie and because they had no reason to look at the plaintiff's first quarter rejected mail logs. Dkt. No. 104 at 5-8. Edwards filed a response in which she states that counsel did not contact Mr. Grabowski or Alan Degroot, or any other staff member, relative to their declarations or for any reason and that they adopt and incorporate by reference the State defendants' response. Dkt. No. 108 at 1.

Federal district courts have an inherent "authority 'to fashion an appropriate sanction for conduct which abuses the judicial process . . . .'" Abner v. Scott Mem'l Hosp., 634 F.3d 962, 964 (7th Cir. 2011) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)). "A court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering enforcement of a court's order.'" Fuery v. City of Chi., 900 F.3d 450, 463 (7th Cir. 2018) (quoting Chambers, 501 U.S. at 45-46). "Before imposing sanctions for litigation misconduct, the district court must make a finding of 'bad faith, designed to obstruct the judicial process, or a violation of a court order.'" REXA, Inc. v. Chester, 42 F.4th 652, 671 (7th Cir. 2022) (quoting Fuery, 900 F.3d at 463-64). See also Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016) ("Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith.").

Upon review of the record—particularly the State defendants' detailed response to the plaintiff's motion—the court finds that no grounds exist to impose sanctions against the defendants. Specifically, the State defendants explain that

> [o]n May 27, 2022, State Defendants filed a response objecting to Plaintiff's motion. (Dkt. 82.) Undersigned counsel for State Defendants contacted Kyle Grabowski, the Litigation Coordinator at GBCI, where Plaintiff is now incarcerated. (Toulouse Decl. ¶ 3-4.) Grabowski checked TextBehind's portal – called CAMMP – and confirmed that Plaintiff's mail was not being held or rejected for delivery by the mail room. (Dkt. 83; Grabowski Decl. ¶ 9.) TextBehind is a third-party vendor that scans, copies and routes inmates' mail to their intended recipient due to a large influx of drugs coming into the institution. (Dkt. 83; Grabowski Decl. ¶ 5.) TextBehind also destroys the inmates' original mail. (*Id.*) Grabowski also checked the institution second quarter rejects log. He did not find any record that the mail room rejected any of Plaintiff's mail for delivery. (Dkt. 83; Grabowski Decl. ¶ 9.) Grabowski also indicated that if Lewis and Williams were unable to receive mail from Plaintiff, the reason could be that they refused to sign the consent to have TextBehind process their mail. (Dkt. 83; Grabowski Decl. ¶ 10.)
>
> On May 27, 2022, counsel for Co-Defendant Edwards filed a motion to join the State Defendants' response to Plaintiff's motion. (Dkt. 84.)
>
> On June 30, 2022, Plaintiff filed a motion to penalize counsel for State Defendants and counsel for Co-Defendant Edwards. (Dkt. 99.) In support of his motion, Plaintiff attached a copy of a decision by ICE Alan DeGroot. DeGroot's decision affirmed Plaintiff's complaint about inmate Lewis receiving only one of his two envelopes. (Dkt. 99-100.) In his decision, DeGroot wrote that he contacted TextBehind and TextBehind stated one of Plaintiff's two envelopes was "cancelled." DeGroot wrote DOC is the only one that [can] cancel it. (*Id.*) DeGroot wrote he also spoke with the mailroom, and the mailroom said they did not cancel it. (*Id.*) DeGroot then wrote TextBehind would manually print the mail and send it to Lewis. (*Id.*)
>
> On this affirmed complaint, Plaintiff alleges that counsels lied, presumably when they represented that there were no records of

>Plaintiff's mail being held or rejected for delivery by the mail room. (Dkt. 99.)
>
>Counsel spoke with DeGroot regarding Plaintiff's affirmed complaint. (Toulouse Decl. ¶ 10.) DeGroot clarified that it is a member of TextBehind who informed him that "only the DOC can cancel mail." (DeGroot Decl. ¶ 9.) DeGroot was not aware that the DOC could cancel inmates' mail. (DeGroot Decl. ¶ 11.) Counsel also spoke with Grabowski again. (Toulouse Decl. ¶ 14.) Grabowski stated he reviewed only Plaintiff's second quarter mail records for his declaration dated May 27, 2022. (Grabowski Supp. Decl. ¶ 11.) He received the attorneys' request in May therefore he thought their request concerned only the months of April and May. (Grabowski Supp. Decl. ¶ 10.) Counsel did not specify which record period to search for. (Toulouse Decl. ¶ 9.)

Dkt. No. 104 at 2-4.

The State defendants acknowledge that counsel did not ask Grabowski to search the first quarter rejected mail log and therefore Grabowski's report that there was no rejected mail was not inaccurate, based on the mail log he searched. Id. at 6. The State defendants should have asked Grabowski to search the first quarter mail log because although the plaintiff filed his motion for extension of time on May 13, 2022, the motion references discovery papers he sent to two incarcerated individuals on January 18, 2022. Dkt. No. 74. That said, the court does not find that the lawyers acted in bad faith in mistakenly failing to request a search of the first quarter log. The plaintiff has not suffered prejudice because the court granted his request for additional time to respond to the defendants' motions for summary judgment. The court will deny the plaintiff's motion for sanctions.

18

Case 2:20-cv-01555-PP   Filed 03/21/23   Page 18 of 19   Document 126

## IV. Conclusion

The court **GRANTS** defendant Sieanna Edwards's motion for summary judgment. Dkt. No. 67. The court **ORDERS** that defendant Edwards is **DISMISSED**.

The court **GRANTS** the State defendants' motion for partial summary judgment. Dkt. No. 75. The court **ORDERS** that defendant Swiekatowski is **DISMISSED**.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 99.

The court **ORDERS** that the parties must appear for a telephonic status conference on **April 25, 2023 at 3:30 PM**. The defendant's counsel shall appear by calling the court's conference line at 551-285-1373 and entering Meeting ID 161 4901 8989 and Passcode 190021 when prompted. The court has made arrangements with Green Bay Correctional Institution for the plaintiff's appearance. The purpose of this conference is to discuss the next steps in the ligitation.

Dated in Milwaukee, Wisconsin this 21st day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**